**UNITED STATES, Appellee,**

v.

**Joseph LUSSIER, Defendant, Appellant.**

**No. 90–1389.**

United States Court of Appeals,
First Circuit.

Submitted Dec. 19, 1990.

Decided March 29, 1991.

Joseph R. Lussier, pro se.

Lincoln C. Almond, U.S. Atty., and Margaret E. Curran, Asst. U.S. Atty., on brief, for appellee.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

PER CURIAM.

The appellant, Joseph R. Lussier, was convicted by a jury of three counts of failure to file a federal income tax return in violation of 26 U.S.C. § 7203. The evidence presented at trial showed (a) that Lussier owed federal income taxes for 1983, 1984 and 1985, and (b) that in each year Lussier failed to file an income tax return. The

evidence also was sufficient to support an inference that Lussier acted willfully.

Lussier does not attack the sufficiency of the evidence. Instead, he challenges the manner in which the proceedings against him were carried out. Each of his arguments, however, falls short of its mark, and we affirm the conviction.

*Jurisdiction*

■ Because Lussier refused to appear willingly in response to a summons from the government, he was arrested and brought before the magistrate for arraignment. He contends that the arrest was invalid because it was performed "outside the territorial limits and jurisdiction of the United States" (that is, not on land actually owned and administered by the federal government, "such as a post office or a fort"), and that the district court consequently lacked jurisdiction over both his person and the subject matter of the prosecution. Many courts have rejected this "silly claim." *United States v. Koliboski,* 732 F.2d 1328, 1329 (7th Cir.1984) and cases cited therein. We join them. It is well settled that a district court has *personal* jurisdiction over any party who appears before it, regardless of how his appearance was obtained. *United States v. Stuart,* 689 F.2d 759, 762 (8th Cir.1982); *United States v. Warren,* 610 F.2d 680, 684 n. 8 (9th Cir.1980). 18 U.S.C. § 3231, moreover, gives the district court *subject matter* jurisdiction over "all offenses against the laws of the United States." This category of offenses obviously includes the crimes defined in Title 26. *See United States v. Studley,* 783 F.2d 934, 937 (9th Cir.1986).

*Self–Incrimination*

After his arrest, Lussier refused to provide the government with routine "booking" information regarding his name, age, address and so forth. At the arraignment, the magistrate acknowledged that Lussier had a constitutional right to remain completely silent, but notified him that without the booking information he found it impossible to determine whether Lussier should be released on bail. Consequently, the magistrate remanded Lussier to the custo-dy of the federal authorities. Twenty-two days later, when Lussier relented and provided the requisite information, he was granted bail and released. Lussier challenges what he characterizes as an attempt to "coerce" him to waive his Fifth Amendment right against self-incrimination. The magistrate, he says, should neither have threatened him with incarceration if he did not provide the booking information, nor actually jailed him when he stood on his constitutional right to silence.

■ Whatever the constitutional propriety of the magistrate's actions, the issue is now moot. When Lussier provided the requested booking information, the magistrate released him, and the information was not thereafter used against Lussier in any way. Lussier currently has no need for or entitlement to bail, and no claim that the magistrate's actions in any way affected the fairness of his trial. *See Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982) (a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome); *United States v. Vachon,* 869 F.2d 653, 656 (1st Cir.1989).

*Nature and Cause*

■ Lussier argues that the district court failed to inform him of the "nature and cause" of the charges against him, but does not identify the omission specifically. The claim, in any case, is specious. Lussier was provided with a copy of the criminal information issued by the United States Attorney, a document that apprised him of the offense charged and the elements thereof, including the amount of taxes due and owing, and the actions alleged to constitute willful failure to file a return. The Sixth Amendment requires nothing more. *See United States v. Serino,* 835 F.2d 924, 929 (1st Cir.1987), citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (an indictment satisfies the Sixth Amendment if it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend);

*United States v. Little*, 321 F.Supp. 388 (D.Del.1971) (same for criminal information).

### Counsel of Choice

Lussier contends that he was deprived of his right to the "effective assistance of his counsel of choice." He does not, however, make a coherent argument in support of his claim. The record shows that Lussier chose to represent himself, but that the court nevertheless appointed "stand by" counsel to assist him as he desired. The record also suggests that Lussier wanted, but was denied, the right to use lay "counsel" to assist him in some manner before or during trial.

■■■ We see no infirmity in the district court's exclusion of lay counsel from the proceedings. The right to effective assistance of counsel is a fundamental Sixth Amendment right, but the right to choose counsel is not absolute. *United States v. Machor*, 879 F.2d 945, 952 (1st Cir.1989). A criminal defendant has no right to lay counsel. *See Tyree v. United States*, 892 F.2d 958, 959 (10th Cir.1989); *United States v. Turnbull*, 888 F.2d 636, 638 (9th Cir.1989); *United States v. Tedder*, 787 F.2d 540, 543 (10th Cir.1986); *United States v. Schmitt*, 784 F.2d 880 (8th Cir. 1986); *United States v. Brown*, 591 F.2d 307 (5th Cir.1979); *United States v. Wilhelm*, 570 F.2d 461, 465 and n. 9 (3d Cir. 1978) and cases cited therein.

### Continuance

At a hearing before the magistrate on January 5, 1990, the government agreed to allow Lussier and a family member to inspect the government's documents relating to the case. The magistrate issued an order directing that this inspection take place on January 19, but the order apparently was lost and Lussier did not appear for the inspection. On January 26 he called the prosecutor, who invited him to come and inspect the government's records on January 31. When Lussier insisted on bringing a "friend" rather than a family member, however, the prosecutor refused him access, citing the specific terms of the court's order.

Lussier appeared in court for a calendar call on February 5, having filed a motion for a continuance of trial the day before. The district court sorted out the discovery issue, directed that Lussier be allowed to inspect the government's documents that afternoon, denied the motion for a continuance, and appointed stand-by counsel. The jury was empaneled the next day, and the trial took place on February 12, 13 and 14. Lussier claims that by denying the motion for continuance, the district court deprived him of adequate time to prepare for his trial. We disagree.

■■■ The district court has broad discretion to grant or deny continuances. Only an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" will abuse it. *United States v. Torres*, 793 F.2d 436, 440 (1st Cir.1986), citing *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983). In deciding whether denial of a continuance is an abuse of discretion, we must evaluate each case on its own facts, paying particular attention to the reasons presented to the trial judge at the time the request was denied. *Id.* Other factors may also be relevant, including (1) the amount of time available for preparation, (2) the likelihood of prejudice from the denial, (3) the defendant's role in shortening effective preparation time, (4) the degree of complexity of the case and (5) the availability of discovery from the prosecution. *United States v. Uptain*, 531 F.2d 1281, 1286 (5th Cir.1976).

■■■ The reason Lussier gave for his motion for a continuance was his inability to gain access to the government's evidence. It is quite clear, however, that this was a circumstance at least in part of his own making, and that the district court rectified the situation on the same day that Lussier argued his motion. Lussier had nearly sixty days overall to prepare for trial, including a full week after he saw the government's evidence. The issues in this case, moreover, were far from complex. We see no prejudice resulting from the

district court's decision, and no abuse of discretion.

*Jury Panel Information*

On February 2, Lussier filed a "Motion for Order of Court Directing Jury Clerk to Divulge Jury Panel Information in Advance of Trial." By this motion he sought a list of the names, addresses and Social Security numbers of the prospective jurors in his case, for use in securing information under 26 U.S.C. § 6103(h)(5). When the United States is a party to a judicial proceeding, 26 U.S.C. § 6103(h)(5) directs the Secretary of the Treasury to divulge, to any party to the proceeding who inquires, whether "an individual who is a prospective juror ... has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply...." Citing this statute, Lussier asked that he be provided with information regarding the makeup of the entire jury panel at least one month before trial began, so that he would have time to approach the IRS before jury selection began.

 Instead, on February 5, the day before the jury was chosen, the district court took a more practical approach. It indicated that it would ask each prospective juror, as he or she was empaneled, whether he or she had ever been the subject of an audit or tax investigation, and to allow either party to disqualify those who answered affirmatively. It appears that the jurors actually selected all responded negatively to those inquiries. Once the jury had been seated, the court directed the prosecutor to verify their negative answers by making a § 6103(h)(5) request to the Internal Revenue Service relative to each of the chosen jurors. The prosecutor did so, and before the jurors were sworn on February 12, reported that the answers of all jurors had been verified by the Secretary, except that the IRS could not locate the records of one juror because of a mistaken Social Security number. As to this juror, the government later advised the court, just before it charged the jury, that the IRS had

at last located her records and verified her negative answer as well.

Relying on *United States v. Hashimoto,* 878 F.2d 1126 (9th Cir.1989), Lussier insists that the district court committed reversible error. In *Hashimoto,* the district court ignored the defendant's request that he be provided with the jury panel list several months before trial. Pursuant to local procedures, the defendant received such a list seven days before trial, but did not then make a request under § 6103(h)(5). At voir dire, according to the majority opinion, the court failed to inquire sufficiently about the jurors' past dealings with the IRS.

A majority of the *Hashimoto* panel ruled that the mandatory language of § 6103(h)(5) gave the defendant an "absolute right" to juror information. Reasoning that, "as a general rule, seven days will not be sufficient time in which to file and receive a response to a written request submitted pursuant to § 6103(h)(5)," the panel decided that "the defendant should be permitted to receive the jury list as soon as it has been drawn." 878 F.2d at 1130.

Having found an error, the *Hashimoto* majority then decided that the error was reversible. It noted two alternative standards for determining whether denial of § 6103(h)(5) information was reversible error: (1) the "standards used to evaluate whether a trial court's restrictions on voir dire require reversal," that is, whether the denial raised "a significant risk of prejudice and examination of the jurors failed to negate that inference," or (2) an absolute standard under which reversal would be required in all cases in which juror tax information was improperly denied, "inasmuch as Congress thought the right important enough to create, by statute, an unqualified right to such information in tax cases." *Id.* at 1133.

The *Hashimoto* majority did not have to choose between the alternative standards, since it found that even under the first, less stringent, test, reversal was necessary. This was because "none of the questions asked during voir dire was sufficient to counter the presumption of risk of preju-

dice that, at a minimum, arises from a violation of the statute." *Id.* at 1134.

The Fifth Circuit has also considered the issue, but has rejected *Hashimoto's* result. In *United States v. Masat*, 896 F.2d 88 (5th Cir.1990), the defendant received a list of jurors and made inquiry to the IRS, but had yet to receive complete information before voir dire. The district court denied the defendant's motion for a continuance, but asked the prospective jurors whether or not they had been the subject of an audit or controversy with the IRS.

The Fifth Circuit stated that the court should have allowed Masat time to obtain from the IRS the juror information he sought, but held that any error committed by the district court was not prejudicial, "for the jurors were [subsequently] asked the relevant questions by the trial judge." *Id.* at 95.

We do not think that § 6103(h)(5) requires a tax defendant to receive the names of the venire a month or more in advance of trial, as the *Hashimoto* majority held. The statute itself makes no provision for such an extreme alteration of normal trial arrangements. It merely directs the Secretary of the Treasury to make certain information available upon request. Subject only to review for abuse, the district court retains discretion to ascertain the relevance and need for such information in a given case, and the proper measures to accommodate a § 6103(h)(5) request. In a tax prosecution such as this, we encourage the district court to take reasonable and feasible steps to enable a defendant, who makes a clear and timely request, to procure § 6103(h)(5) information prior to the swearing of the jury. But we do not lay down a hard and fast rule.

In the circumstances of the present case, we hold that the approach taken by the district court—winnowing the juror pool through questions on voir dire, directing the prosecutor to verify the empaneled jurors' answers by obtaining § 6103(h)(5) information about them from the IRS, and in fact obtaining such verification before the jury was sworn—adequately enforced both the letter and spirit of the statute. The process failed only insofar as the Secretary's response concerning one of the jurors was not obtained before proceeding to trial. Any error, however, was harmless since when the information as to the last juror was received, it fully confirmed the juror's response on voir dire. In the present case, unlike in *Masat*, all of the information obtained on voir dire was thus confirmed by the Secretary pursuant to § 6103(h)(5). This clearly avoided any question of unfairness or statutory noncompliance. We need not determine to what extent other, less sedulous, efforts to ensure that the defendant received the statutory information would still suffice for affirmance.

*Failure to Sequester*

■ Pursuant to Fed.R.Evid. 615, the district court sequestered all trial witnesses except (1) the government's case agent, who served as the government's designated representative under Fed.R.Evid. 615(2) and therefore was entitled to remain in court, and (2) an IRS agent named Gary Soares, who testified at the end of the government's case to his calculation of the taxes due and owing by Lussier, based on "the testimony and documents in evidence." Lussier objects to Soares' presence, but there was no error in the district court's decision to allow him to remain. Whether one denominates Soares as a "fact" or "expert" witness, it is clear that his testimony was based on, summarized, and was consistent with the evidence presented at trial, and that there would have been "little, if any reason" to sequester him. *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629–30 (6th Cir. 1978) (little if any reason to sequester a witness who is to testify in an expert capacity only and not to the facts of the case). Lussier was not prejudiced by the decision to allow Soares to remain in court, which consequently was not an abuse of the district court's discretion. *See United States v. Jewett*, 520 F.2d 581, 584 (1st Cir.1975).

*Exclusion of Exhibits*

In a supplemental brief, Lussier called attention to the recent Supreme Court deci-

sion in *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In *Cheek,* the Court overturned a tax evasion conviction where the district court had instructed the jury that a defendant's good-faith misunderstanding of the requirements of the law would negate willfullness only if the misunderstanding was "objectively reasonable." The inquiry, the Court said, should properly focus on what the defendant actually believed; the reasonableness or unreasonableness of a purported belief is relevant only inasmuch as it casts light on the credibility of the defendant's claim. 111 S.Ct. at 610–12. This has long been the rule in this circuit, *see United States v. Aitken,* 755 F.2d 188, 191–93 (1st Cir.1985), and the district court's instructions to the jury followed the law exactly.

Lussier contends, however, that the district court violated *Cheek* when it excluded three proffered exhibits; (1) a copy of the 1946 Federal Register, which contained a long-superseded regulation saying that a W–2 form can be filed in lieu of a Form 1040 tax return, (2) a copy of the tax code, and (3) a copy of the United States Constitution. Lussier says that he wanted to introduce the exhibits to show that he actually believed that he was not required to file a tax return.

Since the critical element in a tax case is often the defendant's mental state, many courts have given the accused "wide latitude" in the introduction of evidence which may tend to show a lack of willfulness or specific intent. *United States v. Sternstein,* 596 F.2d 528, 530 (2d Cir.1979). *See also United States v. Brown,* 411 F.2d 1134 (10th Cir.1969). In *Cheek,* the Supreme Court noted that the district court erred when it instructed the jury to disregard evidence (in that case, the defendant's own testimony) that the defendant was not required to file a return or to pay income taxes, "as incredible as such misunderstandings of and beliefs about the law might be." 111 S.Ct. at 611.

The evidence at issue here, however, was properly excluded because the exhibits lacked a foundation of evidence or offer of proof to link them to the willfulness issue. The exhibits would have been relevant only insofar as they supported other evidence offered to negate the element of willfulness, for example, testimony that Lussier knew of the 1946 regulation and relied on it when he decided not to file a tax return, or that he attempted to consult the tax code and was led astray by its bulk and confusing language. But no evidence to that effect was introduced or proffered. Absent such a foundation, the exhibits could only have confused the jury. *See United States v. Wilson,* 798 F.2d 509, 515–16 (1st Cir.1986).

*Affirmed.*