**UNITED STATES, Appellee,**

v.

**Roland Leon HUGUENIN, Defendant, Appellant.**

**No. 90–1591.**

United States Court of Appeals, First Circuit.

Submitted Dec. 19, 1990.

Decided Nov. 19, 1991.

Rehearing and Rehearing En Banc Denied Jan. 6, 1992.

---

Roland Leon Huguenin, pro se.

Lincoln C. Almond, U.S. Atty., and Margaret E. Curran, Asst. U.S. Atty., on brief for appellee.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

PER CURIAM.

The appellant, Roland L. Huguenin, was convicted by a jury on three counts of attempting to evade and defeat the federal income tax in violation of 26 U.S.C. § 7201. On appeal, Huguenin raises eleven arguments, of which we will discuss only three: (1) that the indictment was duplicitous, (2) that Huguenin was wrongfully subjected to a competency examination, and (3) that he was wrongfully denied an opportunity to obtain information about the prospective jurors pursuant to 26 U.S.C. § 6103(h)(5). The other eight arguments range from the discarded[1] to the frivolous;[2] as none is of any substance, we need comment no further.

1. *Duplicity*

Huguenin contends that the indictment was defective because it was duplicitous, that is, because it charged more than one offense in a single count. 8 Moore's Federal Practice ¶ 8.04[1] (2d ed.). Count one of the indictment alleged:

That during the calendar year 1984, ROLAND LEON HUGUENIN, a resident of Burrillville, Rhode Island, had and received adjusted gross income in the sum of $30,567.17; that upon said adjusted gross income there was owing to the United States of America an income tax of $4,459.00; that well-knowing and believing the foregoing facts, ROLAND LEON HUGUENIN, on or about April 16, 1985, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States for said calendar year by failing to make an income tax return on or about April 16, 1985, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax, and by filing a false W-4 form (Withholding Allowance Certificate) on or about March 6, 1984, with his employer, in which he stated that in both the previous year (1983) and the current year (1984) he did not owe any tax and had a right to a full tax refund, and filing an affidavit on or about September 30, 1987, with his employer, in which he swore that he was exempt from withholding with respect to income taxes because he had no income tax liability for the preceding year and he anticipated no income tax liability for the current year.

The other two counts are virtually identical to count one except for some of the

---

1. Huguenin says that the trial judge could not exercise Article III powers over him since the judge would not tell Huguenin whether he (that is, the judge) pays his income taxes. A judge who pays the income tax, Huguenin argues, is subject to a diminution of salary in violation of Article III. Although this view once held some currency, *see Evans v. Gore*, 253 U.S. 245, 255, 40 S.Ct. 550, 553, 64 L.Ed. 887 (1920), it has long been superseded by the more sensible notion that to "subject [judges] to a general tax is merely to recognize that judges are also citizens, and that their particular function in government does not generate an immunity from sharing with their fellow citizens the material burden of the government whose Constitution and laws they are charged with administering." *O'Malley v. Woodrough*, 307 U.S. 277, 282, 59 S.Ct. 838, 840, 83 L.Ed. 1289 (1939).

2. For example, Huguenin argues that the district court lacked jurisdiction over both him and his crime because Huguenin was not arrested on property owned by the United States and because the crime of tax evasion is not codified in Title 18 of the United States Code. Termed a "silly claim" by one court, this argument has been rejected by a number of courts. *See United States v. Koliboski*, 732 F.2d 1328, 1329 (7th Cir.1984) and cases cited therein.

allegations about dates and the amounts of money involved.

Pointing to *Sansone v. United States,* 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965), Huguenin contends that his indictment is duplicitous because it contains allegations that could be interpreted to charge him with both evasion-of-payment and evasion-of-assessment.[3] We see no merit to this contention, since we can, as we recently did with respect to a similar indictment in *United States v. Waldeck,* 909 F.2d 555, 558 (1st Cir.1990), characterize Huguenin's indictment as one in which the elements of evasion-of-payment are "overborne" by the "clear and unequivocal" evasion-of-assessment charges. No matter how one resolves the semantic question, moreover, it is beyond reasonable dispute that the indictment charged Huguenin with a single, cognizable crime, and that the jury convicted him of the same crime. *See United States v. Dunkel,* 900 F.2d 105, 107 (7th Cir.1990). This case therefore raises none of the concerns underlying the prohibition against duplicitous indictments. *See United States v. Saleh,* 875 F.2d 535, 537 (6th Cir.1989) (vice of duplicity is that a jury may find defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense). *See also* 8 Moore's Federal Practice ¶ 8.03[1] (other concerns underlying prohibition against duplicity include protection of defendant's right to notice of the nature and cause of the proceedings against him, so that he may effectively prepare a defense).

### 2. *Competency*

On October 13, 1989 the district court held a hearing on Huguenin's appeal of a magistrate's denial of his motion to vacate the arraignment order. At the hearing, Huguenin refused to acknowledge his presence or to identify himself, and challenged the court's jurisdiction over him and his case. After denying the appeal as frivolous, the court noted for the record that it had "serious doubts as to [Huguenin's] competency to represent himself, and also serious doubt as to his full understanding of these charges, the seriousness of these charges, and what is about to occur." More specifically, the court said:

> ... I've read all the papers and all the filings that have been made by this defendant, and it raises serious doubts in my mind as to the competency of this defendant to stand trial. It seems to me that this defendant is engaged in a process that psychiatrists and psychologists call denial. He is out of touch with reality in this case. He seems to avoid the reality of these charges and these proceedings, and persists in a bizarre form of behavior, rejecting anything that occurs in these proceedings.

The district court did not immediately commit Huguenin to a federal facility for examination, but attempted first to arrange an evaluation by a psychiatrist located in Boston. Huguenin, however, showed up at the scheduled examination accompanied by several "witnesses," and refused to submit to the examination unless his companions were allowed to observe or he was allowed to tape record the session. After receiving the psychiatrist's report of this aborted encounter, the district court held a hearing and, on December 12, 1989, granted the government's motion to revoke bail and committed Huguenin for a determination of his competency to stand trial, pursuant to 18 U.S.C. §§ 4241 and 4247.

Some 77 days later, on February 26, 1990, Huguenin returned to court for a competency hearing. He represented himself, but was accompanied by stand-by counsel, who had been appointed by the court. The district court had by then received a competency report from federal psychiatric authorities which concluded, in the court's paraphrase, that "Mr. Huguenin

---

**3.** In *Sansone* the Court said that "§ 7201 includes the offense of willfully attempting to evade or defeat the *assessment* of a tax as well as the offense of willfully attempting to evade or defeat the *payment* of a tax." *Id.* (emphasis in original). Thus, the fact that Sansone had "stat- ed to a revenue agent that he intended to report his 1957 income in some later year, even if taken at face value, would not detract from the criminality of his willful act defeating the 1957 assessment." *Id.*

is competent to stand trial and to defend himself." Neither Huguenin nor the government objected to the report or its conclusion; consequently, the district court reinstated bail. Responding to a request from Huguenin for a thirty-day extension "so I can put my material together and view it, consult with my standby counsel", the court put the case on its trial calendar for the end of March. The calendar call did not, in fact, come until April 11.

█ Huguenin raises several challenges to the manner in which the court conducted the proceedings to determine his competency, of which we think only two bear comment. First, he claims that the district court had no right to subject him to a competency examination without his consent. This is incorrect. The statute provides that the district court may order a competency examination—either on the government's motion or sua sponte, as well as at the defendant's request—when it has "reasonable cause" to believe that the defendant may not be competent to "understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Requiring the defendant's consent (particularly where the defendant has chosen to represent himself) could very well defeat the purpose of the statute, since if the defendant is in fact incompetent, his decision to give or withhold consent to an examination cannot be considered valid. *See United States v. Muncaster*, 345 F.Supp. 970 (M.D.Ala.1972), *aff'd* 472 F.2d 1407 (5th Cir.), *cert. denied*, 412 U.S. 963, 93 S.Ct. 3021, 37 L.Ed.2d 1011 (1973) (if defendant "is competent, [he] needs no examination, and the examination will not help [him] ...", while if he "is incompetent, [he] cannot make the decision, and [his] agreement thereto is void"). We think that Huguenin's sometimes bizarre behavior, which included a demand that the prosecutor and magistrate both be arrested, and his contention (in response to a direction that he

obtain licensed rather than lay counsel) that there were no licensed lawyers in the State of Rhode Island, gave the court "reasonable cause" to invoke § 4241(a) and assure itself of Huguenin's competency before proceeding to trial.

█ Huguenin's second argument is that the court erred in allowing his commitment to extend to seventy-seven days. 18 U.S.C. § 4247(b) authorizes the court to commit a defendant for a competency examination under § 4241 for "a reasonable period, but not to exceed thirty days," and to extend the commitment for fifteen more days, upon application of the director of the facility to which the defendant is committed, "upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."

█ Huguenin's prolonged detention thus does appear to have violated the time limits prescribed in the statute. The record discloses no request for an extension, and the total period of detention, in any case, exceeds the maximum statutory period by more than one month. The violation, however, does not require reversal or a new trial, for it in no way affected the fairness or reliability of the ensuing trial. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) (reiterating "established rule" that illegal arrest or detention does not void a subsequent conviction); *United States v. Causey*, 835 F.2d 1527, 1529 (5th Cir.1988) (delay in bringing defendant before magistrate may have violated Fed.R.Crim.P. 5(a) but did not affect validity of conviction where defendant did not show that he was prejudiced by delay); *United States v. Studley*, 783 F.2d 934, 937 n. 2 (9th Cir.1986) (same). Huguenin has no claim that the detention denied him his right to a speedy trial, since (a) it appears from the record that (once properly excludable delays are figured into the calculation) his trial began within the seventy-day period required by the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) and (h),[4] and (b) Hugue-

---

4. Huguenin was arraigned on July 26, 1989. His trial began, for purposes of the Speedy Trial Act, when the jury was empaneled on April 11, 1990—259 days later. *See United States v. Za-*

*yas*, 876 F.2d 1057, 1058 (1st Cir.1989). Of those 259 days, however, 191 were excludable. One hundred and one were taken up with the pendency of various pre-trial motions, and sixty

nin failed to raise a timely speedy trial objection, which unless it is raised before trial by a motion to dismiss, is deemed to be waived. 18 U.S.C. § 3162(a)(2). *See also United States v. Paradis*, 802 F.2d 553, 556 (1st Cir.1986). Nor can Huguenin contend that his extended commitment deprived him of adequate time to prepare for trial: as noted above, the district court granted Huguenin's request for a thirty-day continuance at the hearing on February 26. This gave him ample time to prepare his defense.

■ Finally, the record contains no suggestion that the competency examination and hearing process, however extended, may have produced an incorrect result— that is to say, that Huguenin was tried even though he was in fact incompetent.[5] Although the conviction of an accused while he is mentally incompetent would be a deprivation of due process, *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), which can never be harmless error, *United States ex. rel. Lewis v. Lane*, 822 F.2d 703, 706 (7th Cir.1987), procedural glitches during the competency determination may be deemed harmless error where there is no reasonable probability that different procedures would have produced a finding of incompetency. *Id.* See also *Sturgis v. Goldsmith*, 796 F.2d 1103, 1109 (9th Cir.1986); *Hayes v. United States*, 468 F.Supp. 179, 184 (S.D.Tex.1979).

### 3. Jury Information

On March 8, 1990, six weeks before his trial began, Huguenin asked the district court to give him a list of the names, addresses and Social Security numbers of all prospective jurors at least one month in advance of trial, so that he could ask the Internal Revenue Service for information about the venire members under 26 U.S.C. § 6103(h)(5). The statute provides:

> In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States Attorney) involved in such proceeding or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

The district court denied Huguenin's motion. However, immediately prior to trial, at the prosecutor's suggestion, the court initiated a two-step procedure of its own to obtain the information covered by Section 6103(h)(5).

When the court empaneled the jury on April 12, 1990, the prosecutor collectively asked the first twelve jurors called whether they or anyone in their immediate families had ever been audited or investigated by the IRS. Only one juror spoke up, saying that he had worked for a company that had been audited many times. This juror, along with several others, was excused as the parties exercised their peremptory challenges.

As the court called new jurors to replace those excused, the prosecutor asked each of them the same question: Have you, or any member of your immediate family, ever been audited or investigated by the Internal Revenue Service? At length, a panel of twelve jurors and two alternates was selected. Eleven of the jurors and one

more were devoted to arranging the psychiatric examination in Boston and dealing with Huguenin's refusal to participate in it. Finally, thirty of the seventy-seven days of Huguenin's commitment were properly excludable, since Huguenin could legitimately have been detained for at least that much time. *See United States v. Jones*, 887 F.2d 492, 493 and n. 1 (4th Cir.1989) (where defendant was committed for sixty-six days, district court excluded thirty days for purposes of speedy trial calculation).

**5.** The transcript shows that Huguenin (who largely conducted his own defense) was inexperienced at trial procedures, and obstinate and occasionally obstreperous in his attitude toward the court, but gives no hint that he was mentally incompetent at the time of trial.

of the alternates had answered "No" to the prosecutor's question concerning IRS audits or investigations, but two of the panel members had answered "Yes." John Gomes, who participated in the jury's deliberations and verdict, said that he had been audited twelve or thirteen years earlier. Patricia Gilbert, who sat only as an alternate, said that she had been audited fifteen years earlier. Huguenin did not object to the empanelment of either Gomes or Gilbert.

As a second step, the district court directed the prosecutor to submit the empaneled jurors' names and Social Security numbers to the IRS and to request a response under § 6103(h)(5). Several days later, the IRS responded that none of the fourteen jurors had been audited or investigated by the IRS. This response conflicted with the recollections of jurors Gomes and Gilbert, but neither Huguenin nor the government brought the inconsistency to the court's attention, and the trial began on April 23.

The government eventually disclosed the source of the discrepancy. After Huguenin's appeal had been briefed, the government advised us that the IRS' response in this case "covered only the period from 1985 through 1990." The IRS had so limited its search because it could conduct a rapid computerized search for § 6103(h)(5) information only for the current year and the five preceding tax years. A more complete search would require a time-consuming, manual review of the files "by year and by region of filing."

We remanded the matter to the district court with instructions, among other things, to obtain a complete § 6103(h)(5) response from the IRS and to determine whether the response revealed any other discrepancies between the jurors' voir dire answers and their tax records. The complete response verified the "Yes" answers given on voir dire by jurors Gomes and Gilbert, but contradicted the "No" answers given by jurors Henry and McGowan. According to the IRS records, Henry had been audited in 1978, McGowan in 1975.

■ We find no reversible error in this record. By its terms, the statute imposes a duty to provide information about prospective jurors only on the Secretary of the Treasury, not on the district court. We do not subscribe to the Ninth Circuit decisions which say that Section 6103(h)(5) gives tax defendants an "absolute right" not to proceed to trial without IRS record information about prospective jurors. *See United States v. Sinigaglio*, 925 F.2d 339, 341 (9th Cir.1991); *United States v. Hashimoto*, 878 F.2d 1126, 1130 (9th Cir.1989). Nothing in the statute or in its legislative history suggests that Congress intended the statute to override the district court's authority to control its docket and its public duty to offer prompt and efficient administration of justice. *United States v. Spine*, 945 F.2d 143, 147–148 (6th Cir.1991). The district court has an implicit responsibility to promote compliance with § 6103(h)(5), but we must define this responsibility, and the district judge must discharge it, in a manner that takes into account those competing, and we think paramount, concerns. *See United States v. Lussier*, 929 F.2d 25, 30 (1st Cir.1991) (statute makes no provision for extreme alteration of normal trial arrangements).

■ We turn, then, to an evaluation of the procedures used in this case. The procedure that the district court sought to use was entirely proper; we have already held that the district court can "adequately enforce[ ] both the letter and spirit of the statute" by "winnowing the juror pool through questions on voir dire, directing the prosecutor to verify the empaneled jurors' answers to § 6103(h)(5) information about them from the IRS, and in fact obtaining such verification...." *United States v. Lussier*, 929 F.2d at 30.

It is true that the IRS' time-limited response to the prosecutor's request prevented the court from obtaining *complete* verification of the jurors' voir dire answers. But we see no practical way to have avoided that lapse. It is a fact (established on remand in this case by the district court) that a § 6103(h)(5) response going back

more than six years requires the IRS to conduct a time-consuming manual search of records housed at one or more of its regional service centers.[6] If, in a given case, the district court can reasonably arrange its docket to accommodate this fact, it may certainly do so, and, where feasible, this may be a desirable course.[7] But we cannot say that a district court has committed reversible error when it attempts to balance competing interests by obtaining the next best alternative to a full § 6103(h)(5) response from another source: the jurors' answers to voir dire questions.

Defendants in other cases involving § 6103(h)(5)—though not the appellant in this case—have challenged the sufficiency of voir dire questions about a juror's audit history, pointing out that in the absence of a full response from the IRS the defendant has no way to confirm the accuracy of the jurors' responses. *See United States v. Spine*, at 148. *See also United States v. Sinigaglio*, 925 F.2d at 342 (voir dire questions do not negate "risk of prejudice" raised by incomplete § 6103(h)(5) response). The Fifth and Sixth Circuits have responded to this objection by noting that the courts ordinarily presume veniremen to tell the truth on voir dire, even in response to "sensitive and potentially embarrassing questions." *United States v. Masat*, 896 F.2d 88, 95 (5th Cir.1990). *See also United States v. Spine*, at 148.

We endorse this response, and offer another: even if some jurors were not to tell the truth on voir dire, the "risk of prejudice" to which their falsehoods would expose a tax defendant is ephemeral. If § 6103(h)(5) has any value, it is to alert a tax defendant (or tax prosecutor) to the possibility of bias caused by a prospective juror's history of dealings with the IRS. *See United States v. Hashimoto*, 878 F.2d at 1135 (Wiggins, J., dissenting). Common sense tells us that a juror who falsely states that he has *not* been audited or investigated poses little real risk of bias to the defendant. The juror has either forgotten about the audit (as the district court believes happened here to Henry and McGowan), or has lied about it, perhaps out of embarrassment. In the first case the juror presents no more or less a risk of bias (to either the defendant or the government) than a juror who actually has not been audited or investigated—what the juror does not know cannot warp his judgment. In the second case, the *government* bears the only plausible burden of risk, since "it is difficult to conceive of a juror who has experienced the investigative powers of the I.R.S. favoring the government over the defendant, a coinvestigatee." *United States v. Johnson*, 762 F.Supp. 275, 277 (C.D.Cal.1991).[8]

A *defendant* might arguably risk prejudice were a court to seat a juror who falsely stated on voir dire that he *had* been audited, and the incomplete § 6103(h)(5) response failed to reveal the truth. Whether any prospective juror would ever tell such a lie is a matter of speculation, if not

---

6. The IRS took nineteen business days to perform a "complete" search of the fourteen jurors' tax records. The search was "complete" in that it went back to 1967, taking into account all of the records "capable of definitively showing whether or not a person has been audited or investigated." The IRS performed the "complete" search by manually reviewing microfilmed records located at the Andover Regional Service Center, where it keeps records of returns filed in New England. All of the jurors in this case had filed all of their returns for all of the years in question at the Andover center. Had any of the jurors ever filed returns in other areas of the country, the IRS would have had to perform manual searches at the service centers for those areas, and the search process would have lasted longer than nineteen days.

7. In this case, the district court suggested that it might allow the IRS to conduct a complete search without seriously disrupting its docket by (1) hearing other trials while awaiting the search results, or (2) bringing in a special juror panel for the express purpose of empaneling a § 6103(h)(5) case several weeks before the anticipated trial date. Given, however, the variations in workload and personnel among different courts, we expressly refrain from requiring a court to adapt its schedule in this manner.

8. Common sense evidently spoke to Huguenin, too: he did not challenge either of the two jurors who recalled being audited on voir dire.

fantasy; in any event, it did not happen here.[9]

*Affirmed.*

---

**9.** We question the materiality of the prejudice to the defendant even if the fantastic did occur. The risk to the defendant in that case is that the court will seat a juror who is not as biased against the government as his voir dire answer might have led the defendant to believe. That a juror may be less biased against the government than the defendant had hoped, however, does not mean that the juror will be more biased against the defendant. Rather, the potential disadvantage is the loss of an unfair advantage; the defendant's only real risk is the risk that he will be judged by an impartial juror.