UNITED STATES of America, Appellee,

v.

William DROGE, Defendant–Appellant.

No. 321, Docket 91–1222.

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1991.

Decided April 7, 1992.

___

Douglas T. Burns, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., for appellee.

James O. Druker, Garden City, N.Y., for defendant-appellant.

Before: TIMBERS, WINTER and WALKER, Circuit Judges.

WALKER, Circuit Judge:

William C. Droge appeals from a judgment of the United States District Court for the Eastern District of New York (Hon. Leonard D. Wexler, *Judge* and jury) convicting him of three counts of wilful federal income tax evasion in violation of 26 U.S.C. § 7201.

Droge raises three arguments: (1) the information he obtained from the IRS pursuant to 26 U.S.C. § 6103(h)(5) regarding the tax audit history of jury *venire* panel members was insufficient because it extended only six years back in time, and the alleged prejudice he suffered as a result was not cured by the judge's questioning of potential jurors on *voir dire;* (2) the district court's jury instruction regarding the element of intent for wilful tax evasion was erroneous; and (3) the sentence was unduly harsh and based upon the district judge's alleged personal bias against Droge. Because we find no merit in any of these contentions, we affirm both Droge's conviction and sentence.

## BACKGROUND

On March 16, 1989, Appellant, William C. Droge, was indicted by a federal grand jury on three counts of wilful evasion of federal income tax in violation of 26 U.S.C. § 7201. The three counts charged Droge with tax evasion for 1982, 1983, and 1984 respectively. Although initially represented by counsel, Droge subsequently elected to proceed *pro se.* The district court, on its own motion, appointed advisory counsel to assist Droge.

During the three day trial held in December of 1990, the government proved that Droge had earned gross income in the amount of $77,539 in 1982, $124,051 in 1983, and $115,581 in 1984. Virtually all of these earnings were deposited in cash into three bank accounts—two held in his wife's married name, and the third held in a name his wife used during a prior marriage. Along with other evidence, the government introduced certain tax shelter subscription documents, pertaining to the relevant period, in which Droge acknowledged that he expected to earn income that would place him in at least a 50% federal income tax bracket. Despite these earnings and admissions, Droge filed no tax return in 1982, 1983 and 1984. What Droge did submit to the IRS, however, were two sworn affidavits stating, in substance, that he did not have any federal income tax liability and that he was not required to perform any act with respect to federal income taxes.

The jury convicted Droge on all three counts. The district court sentenced Droge to two years imprisonment on Count One, four years imprisonment on Count Two to run consecutively, five years probation on Count Three and a $50 special assessment on each count.

## DISCUSSION

### 1) *26 U.S.C. § 6103(h)(5)—Juror Audit History*

Droge argues that he was deprived of his right to juror tax audit information before trial. Although he was provided with juror information going back six years, he argues that this was insufficient since it did not cover the years for which he was being prosecuted and that it led to the court's requesting juror audit information on *voir dire* which prejudiced the jury against him. We find these arguments to be without merit.

In relevant part, section 6103(h)(5) of the United States Code, Title 26, provides that:

In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary [of the Treasury] shall respond to a

written inquiry from an attorney of the Department of Justice ... or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

Prior to Droge's election to proceed pro se, his attorney requested a list of prospective jurors from the court in order to obtain their audit histories pursuant to § 6103(h)(5). Droge was provided with the list and requested the audit information from the Treasury Department ("Treasury"). On September 13, 1990, Droge had not yet received the audit histories from the Treasury. Although the government urged the court to go forward with the trial, Judge Wexler postponed it to enable Droge to receive the information.

On November 15, 1990, the parties appeared for jury selection. By that time Droge had been provided with the requisite information, but it proved useless because jury selection was adjourned to permit a substitution of Droge's attorney advisor who was potentially conflicted.

By December 14, 1990, Droge had received a new set of audit histories from the Treasury for a new panel of prospective jurors. Both the district court and the government were prepared to go forward with the trial, but Droge sought a further postponement based on the fact that the audit histories only went back six years to 1985 and, specifically, did not include information for the years 1982 through 1984 for which he was being prosecuted. Droge requested a continuance until the Treasury supplied him with information dating back to 1982.

The district court denied Droge's request. On *voir dire*, Judge Wexler asked each individual juror whether he or she had ever been audited by the IRS. Thirteen prospective jurors responded that they had been audited. The judge then asked these individuals whether or not their experience

with the IRS would affect their ability to be fair and impartial. Eleven responded that their ability to be fair and impartial would not be affected; one answered that his judgment might be affected and was removed by the government; another indicated that he had a bad experience with "the bureaucratic system," and was removed by the court for cause. Ultimately, seven previously audited jurors were empaneled.

Section 6103(h)(5) explicitly affords defendants the right to obtain an affirmative or negative response from the Treasury to whether a prospective juror has been audited. The section does not specify the time period for which the government must account. Moreover, neither § 6103(h)(5) itself, nor any federal regulation, sets forth any procedures to be followed by the district court or the Treasury in implementing its dictate. Finally, the statute does not set forth the consequences, if any, for non-compliance. Thus, the courts have been left to flesh out the defendants' rights and the government's responsibilities under the statute.

Not surprisingly our sister circuits have adopted different approaches toward filling these statutory lacunae. In *United States v. Hashimoto*, 878 F.2d 1126 (9th Cir.1989), the first case interpreting § 6103(h)(5), the Ninth Circuit held that a defendant's timely pretrial request for the jury list required the district court to respond in sufficient time before trial to enable the defendant to obtain § 6103(h)(5) information from the Treasury. It characterized the defendant's right as "absolute" but declined to apply a "per se" rule requiring reversal for non-compliance since reversal was required in any event under a lesser test. The court held that non-compliance requires an inference of a "significant risk of prejudice", but left open the possibility that the inference could be rebutted by a showing that it was negated by facts brought out on jury *voir dire*. In *United States v. Sinigaglio*, 942 F.2d 581 (9th Cir.1991), the jury *voir dire* was held to be insufficient to negate the "significant risk of prejudice" said to be caused by a disclosure on the eve of trial

of the Treasury audit information going back only six years. In two subsequent cases, the Ninth Circuit appears to have moved toward the view that non-compliance with § 6103(h)(5) can be rendered harmless during jury selection. *See United States v. Hardy*, 941 F.2d 893 (9th Cir. 1991) (error in getting jury list to defendant in time for § 6103(h) request harmless in light of *voir dire* and post-selection verification of answers with Treasury data prior to trial); *United States v. Hicks*, 947 F.2d 1356 (9th Cir.1991) (court's erroneous limitation on request to Treasury for only past six years' data harmless in light of *voir dire* questions as to whether jurors had "ever been audited").

The First Circuit has expressly disclaimed *Hashimoto's* requirement of a timely pre-trial release of the jury list. *United States v. Lussier*, 929 F.2d 25 (1st Cir.1991) (per curiam), condoned the district court's denial of a pre-trial motion for the list where, following the relevant *voir dire*, a panel was chosen and before trial the verifying Treasury information was received. The court said it would "encourage the district court to take reasonable and feasible steps to enable a defendant ... to procure § 6103(h)(5) information prior to the swearing of the jury" but expressly declined to "lay down a hard and fast rule." Where verifying information as to one juror was received late but confirmed the juror's *voir dire* answer, the error was harmless. Similarly, in *United States v. Huguenin*, 950 F.2d 23 (1st Cir.1991), the district court's use of a six year audit history from Treasury to verify *voir dire* answers before the jury was sworn was approved even where the six-year listing could not confirm two "yes" answers for earlier years and more complete Treasury information received later contradicted "no" answers of two other jurors.

The Fifth, Sixth and Eleventh Circuits have found instances of § 6103(h)(5) non-compliance to be harmless error in view of *voir dire* examination into juror audit history. *United States v. Masat*, 896 F.2d 88 (5th Cir.1990) and *United States v. Spine*, 945 F.2d 143 (6th Cir.1991) both found error in the district court's refusal to grant a continuance to enable the defendant to receive more complete juror audit information following defendant's timely request despite his receiving six year audit histories. However, both found the error to be harmless in light of relevant *voir dire* examination. *United States v. Schandl*, 947 F.2d 462 (11th Cir.1991), *petition for cert. filed* (U.S. March 17, 1992) (No. 91–7666) found error in the district court's denial of a timely pre-trial motion for jury list disclosure but also considered it harmless in the context of extensive *voir dire.*

In *United States v. Pabisz*, 936 F.2d 80 (2d Cir.1991), this Court was presented with the question of which standard should be applied to an alleged § 6103(h)(5) violation. While we did not need to reach the issue in *Pabisz*, we noted different approaches taken by other circuits. *Id.* at 84.

■ With the same question squarely before us in this case, we now adopt the rule that errors in compliance may be rendered harmless by appropriate *voir dire* as the appropriate standard of review. In coming to this result we recognize that Congress intended to afford defendants in tax cases a meaningful right when it enacted § 6103(h)(5). *See Hashimoto*, 878 F.2d at 1134. Nevertheless, we are also mindful of the practical difficulties a district court faces in trying manage its docket while awaiting the Treasury's response to a defendant's open ended request for jury tax audit information. In the absence of a statutory directive as to which consideration is controlling, we must balance the two interests in reaching our conclusion.

First, we examine the general nature of the right afforded tax defendants under § 6103(h)(5). Prior to this section's enactment, the only authorization for the release of information concerning a potential juror's prior audit status to the government was contained in Treasury regulations. *See United States v. Spine*, 945 F.2d 143, 147 (6th Cir.1991) (review of statutory history). Treasury Regulation § 301.6103(a)–1(h) authorized the government to receive information from the IRS as to whether a prospective juror " 'has or has not, been

investigated by the Internal Revenue Service.' " *Id.* Criminal tax defendants enjoyed no such right. *Id.*

The available legislative history behind § 6103(h)(5) suggests that the Congressional purpose in enacting this statute was simply to place tax defendants on an informational par with the prosecution regarding the audit histories of potential jurors. *Id.* We further observe that nothing in § 6103(h)(5) precludes either the defendant or the government from making standard inquiries into a potential juror's tax audit history on *voir dire.* To the contrary, § 6103(h)(5) functions as a useful means of supplementing information developed on *voir dire.* The Treasury's required response to a § 6103(h)(5) inquiry is simply "yes" or "no". The Treasury is not required to provide further details such as the year in question or the results of the IRS audit. Any such further information would have to come from a *voir dire* examination. Thus § 6103(h)(5) information may be useful as either a starting point for further questioning or, as used in the First Circuit cases, a means of verifying information already elicited in *voir dire.*

In our view, the heavy burden that would be placed upon the district court in managing its docket, should we insist upon strict literal compliance with § 6103(h)(5) in every case, militates in favor of our adopting a flexible rule. To begin with, § 6103(h)(5)'s command is to the Secretary, not the district court. Moreover, the district court does not control the processes of the Treasury in effectuating compliance. There is no evidence that Congress considered § 6103(h)(5)'s impact on the docket of a busy trial court. Yet, this must be a major consideration in our analysis in light of our supervisory role over the district courts within the circuit.

The IRS's standard practice in complying with § 6103(h)(5) requests is to release potential jurors' audit histories for the most recent six tax years. *See,* Text (22)75.2 IRM 1272, *Disclosure of Official Information Handbook* (1989). However, special consideration is given to criminal cases, for which "[c]riminal investigation files for all available years should be checked. *Id."* The IRS followed its standard practice in this case by providing juror audit histories for six years. What is at issue in this case is the Treasury's response regarding potential jurors' civil audit histories prior to the most recent six years. Existing case law indicates that gathering information predating the most recent six year period apparently requires a manual search of IRS records; moreover, if the juror has moved from a different part of the country, more than one record center may have to be searched. *Cf. United States v. Spine,* 945 F.2d 143, 148 (6th Cir.1991), and one district court has noted that in the case of a large jury pool such a search could take over a year to complete. *See United States v. Johnson,* 762 F.Supp. 275, 277 n. 1 (C.D.Cal.1991).

In light of these considerations, we decline to conclude that § 6103(h)(5) prohibits a district court from proceeding with a criminal tax trial until the IRS has completed an exhaustive search as to the full tax audit histories of each potential juror in a given jury pool. We find support for this conclusion in *United States v. Spine, supra.* Like Droge, the defendant in *Spine* argued that his conviction for tax evasion should be reversed because the Treasury Department disclosed juror tax audit histories that dated back only six years. Spine had requested jury information for the years 1964 through the present. He contended that the government's failure to comply with his request violated his right under the statute and, therefore, reversal of his conviction was warranted.

In rejecting this argument, the court stated:

> [W]e feel that § 6103(h)(5) must be interpreted in light of other competing considerations, such as a district court's authority to control its docket and the public's interest in prompt and efficient administration of justice. More specifically, in order to comply with § 6103(h)(5) a district court is required to grant the defendant a reasonable period of time in which to permit the IRS to conduct a search of its records for potential jurors'

tax histories. If, after a reasonable period of time, the IRS is unable to locate all the potential jurors' tax histories from the time that each began paying taxes, the district court can proceed to trial without running afoul of § 6103(h)(5) by ascertaining such information through voir dire ... To interpret this section otherwise would permit a defendant in a tax matter to postpone his trial indefinitely by simply requesting potential jurors' tax histories *ad infinitum.*

*Id.* at 148.

We agree with *Spine's* reasoning. The statute's intended goal is to promote informational parity between the defense and the prosecution concerning the potential jurors' audit histories, and considering the practical difficulties that would be generated by our insisting upon literal enforcement of § 6103(h)(5), we are primarily concerned only that there be meaningful compliance with the statute's language. Compliance need not be complete in every case. Approximate parity can be reached in other ways (such as by insuring that in a particular case where a defendant has asserted his § 6103(h)(5) rights in a timely fashion, the government does not have audit information not in the possession of the defendant), and we do not believe that Congress intended to achieve it pursuant to § 6103(h)(5) *at all costs. See id.* at 147–48. *See also Lussier,* 929 F.2d at 30 ("The statute itself makes no provision for such an extreme alteration of normal trial arrangements.").

We also disagree with the premise of the Ninth Circuit's *Hashimoto* and *Sinigaglio* decisions that non-compliance necessarily creates a significant "risk of prejudice". Neither case sets forth any reasoning on that score; they simply assume a significant risk of prejudice. There is little reason to suppose that the same question (Have you been audited by the IRS?) posed on *voir dire* would not cure any prejudice. Jurors are under oath and expected to answer truthfully, and we see "no reason to abandon the presumption that jurors ordinarily respond truthfully to questions on voir dire." *Spine,* 945 F.2d at 30; *see also Huguenin,* 950 F.2d at 30; *Masat,* 896 F.2d at 95.

■ In conclusion, we think that a district court should have the flexibility to manage a timely § 6103(h)(5) request in light of its need to effectively control its docket while affording the defendant with meaningful compliance with the statute. Like the First Circuit, *see Lussier,* 929 F.2d at 30, we will lay down no hard and fast rule. However, we believe that the responsibility of the district court is substantially met when the district court assists the defendant in obtaining § 6103(h)(5) information from the Treasury Department by ordering, upon defendant's timely request, the expedited release of jury lists, *see Hashimoto,* 878 F.2d at 1130; affords the defendant a reasonable period of time in which to receive the information from the Treasury Department, *see Spine,* 945 F.2d at 148; and in the event that the information is not received within a reasonable period of time or is incomplete, (a) ascertains that the government is not in possession of any of the requested information that the defendant does not have and (b) inquires into the jurors' past audit history on *voir dire* so as to elicit comparable information, *see Spine,* 945 F.2d at 148; *Lussier,* 929 F.2d at 30; *Masat,* 896 F.2d at 95; *Hashimoto,* 878 F.2d at 1130.

While we find the First Circuit's general approach of selecting a jury with a thorough audit history *voir dire* and then verifying the *voir dire* results with § 6103(h)(5) information before the jury is actually impaneled to be in compliance with the dictates of § 6103(h)(5), *see, Huguenin,* 950 F.2d at 59; *Lussier,* 929 F.2d at 30, we think that it is less satisfactory than the one we have outlined above. This is because such an approach deprives the recipient of the audit history, whether it be the government or the defendant, of whatever strategic value may be derived from having the audit histories prior to *voir dire.* In using § 6103(h)(5) information simply as a check on the jurors' veracity once the panel has been selected, the First Circuit has given the statute its most narrow construction. Although we do not preclude the district courts from employing this method,

we expect that it will only be used as a choice of last resort—where the circumstances of a particular case, such as a delay in receiving the information, make it the only practical option.

If, at the very least, these or comparable steps are not taken, then the government may have difficulty establishing that non-compliance was harmless. Where they are taken, however, we believe that the burden rests on the defendant to show that he or she was actually prejudiced by the Treasury's failure to provide complete juror audit information.

■ Turning to the analysis in this case, we note that Judge Wexler acted reasonably to insure that Droge was afforded his rights under § 6103(h)(5). First, he directed the jury clerk to produce for Droge the requested jury panel lists. Second, during the four month period between September and December 1990, Judge Wexler twice postponed jury selection, both times taking into consideration Droge's right to § 6103(h)(5) disclosure. Thus, he afforded Droge a reasonable period of time to receive the statutory response. Third, Judge Wexler conducted an adequate *voir dire* which included questioning the potential jurors as to whether they had ever been audited. Given the additional fact that the IRS meaningfully complied with § 6103(h)(5) by supplying Droge with the audit history responses for the prior six years, we believe that the burden was on Droge to demonstrate actual prejudice.

■ Droge argues that he was prejudiced by the fact that the tax audit responses that he did receive did not date back to the years for which he was being prosecuted. We disagree. To begin with, Judge Wexler's questioning on *voir dire* elicited information as to each potential juror's entire audit history, including responses covering those years for which Droge was indicted. For the reasons stated above, we reject the notion that § 6103(h)(5) information is necessary to confirm the truthfulness of the jurors' responses.

Furthermore we have difficulty seeing how the failure to receive § 6103(h)(5) juror audit information dating back to the year in which the defendant's charged crime allegedly occurred would have prejudiced him. The more remote in time a potential juror's encounter with the tax-collector, the less likely there will be resulting bias, either for or against the defendant, remaining in that juror's mind. The adage, "time heals all wounds" includes injuries inflicted by the IRS. Thus, to the extent that § 6103(h)(5) corroboration is useful in evaluating jurors' responses on *voir dire*, it fades in importance as the juror-IRS dealings become more remote in time.

■ Finally, Droge contends that the district judge's thorough questioning of jurors on *voir dire* regarding their personal tax histories was prejudicial because it suggested circumstances from which the jurors could infer that Droge had refused to pay his own taxes. We are unpersuaded. Potential jurors are routinely asked whether they or members of their families have been accused of committing crimes for which the defendant in the case is being prosecuted, or whether they have had any disputes with the government generally. *Cf. Masat*, 896 F.2d at 95 ("veniremen are often asked sensitive and potentially embarrassing questions, including inquiries into their involvement in criminal activity or the involvement of family or friends in criminal activity"). As stated earlier, nothing in § 6103(h)(5) precludes *voir dire* on juror tax audit histories; rather, it seems to be invited. Judge Wexler's *voir dire* questioning was entirely proper.

Since Droge has not demonstrated prejudice stemming from his failure to receive complete disclosure from the IRS under § 6103(h)(5), his conviction may not be reversed on those grounds.

### 2) *Subjective "Wilfulness" Charge*

■ Droge also argues that his convictions must be reversed because the district judge gave an erroneous charge to the jury on the element of "wilfulness." Since Droge did not raise a timely objection to the judge's charge, our review is controlled by the plain error standard of Fed. R.Crim.P. 52(b). *See United States v.*

*Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Upon reviewing the charge, we find no error, plain or otherwise.

Citing the Supreme Court's decision in *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), and our own decision in *United States v. Pabisz, supra,* Droge contends that the judge's charge was defective because "the Court was deliberately silent about whether the standard [of wilfulness] to be applied by the jury was objective or subjective." In *Cheek,* the Supreme Court rejected an objective reasonableness test for determining whether a tax evasion defendant actually had a good faith belief concerning the tax laws that would negate the wilfulness element of the crime. The Court adopted a subjective standard. *See id.* 111 S.Ct. at 610–12. In *Pabisz,* the district judge instructed the jury that, "[t]he issue for you is was the defendant reasonable in having a good faith belief that the income tax law did not apply to him, or did he willfully evade the assessment of taxes?" *Pabisz,* 936 F.2d at 82. Following *Cheek,* we reversed the convictions in *Pabisz* because "the jury was not instructed that it must consider whether Pabisz subjectively believed that he did not need to file income tax returns or pay taxes." *Id.* at 83.

██ This case is quite unlike *Cheek* or *Pabisz.* In its charge on wilfulness, the district court stated:

> If you find that the defendant understood what the law required but disagreed with that law, with what the law required, then you must find him guilty. But if you find that he sincerely and in good faith believed that the law was that he did not have to file a return because he was not required to by the Internal Revenue Code, then you cannot find that he acted willfully. Did he sincerely, honestly believe what he said the law required, or did he in fact know that [sic] the law required and simply disagreed with it? It's for you to decide.

Thus, while the charge did not explicitly eschew an "objective" standard or expressly state that the jury had to employ a "subjective" standard in measuring the veracity of Droge's asserted beliefs, its emphasis on Droge's personal sincerity and good faith in those beliefs, and whether they were honestly held by Droge, adequately communicated the subjective approach that the jury was required to take. In essence, the charge properly instructed the jury to determine whether Droge, and only Droge, actually believed that he was not required to file a return or pay taxes and if the jury so found, to acquit him. *Cheek* and *Pabisz* require no more.

### 3) *Severity of Sentence*

██ Lastly, Droge appeals from the sentence imposed by the district judge on the grounds that the it was overly harsh due to "the Court's personal animus" towards him. Since the criminal conduct at issue occurred prior to November, 1987, the sentence imposed was not governed by the Sentencing Guidelines. Absent extraordinary circumstances, we will not set aside a preguidelines sentence when it falls within the parameters set by statute. *See United States v. DiTommaso,* 817 F.2d 201, 217 (2d Cir.1987). Here, Droge received a total of six years imprisonment and five years probation for his conviction on three counts of wilful tax evasion. This falls well within the range of sentences contemplated by the statute for crimes of similar magnitude. *See* 26 U.S.C. § 7201.

██ Droge argues, however, that the district judge imposed a lengthy sentence out of personal spite and in retaliation for Droge's assertion of certain statutory rights both prior to and during trial. Of course, if this were the case resentencing would be required. *See, United States v. Giraldo,* 822 F.2d 205, 210 (2d Cir.) *cert. denied* 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987); *United States v. Brown,* 479 F.2d 1170, 1174 (2d Cir.1973). *Cf. United States v. Edwardo–Franco,* 885 F.2d 1002, 1005–06 (2d Cir.1989). However, we can discern no support for Droge's claim.

██ Judge Wexler reasonably indulged defendant's assertion of rights under

§ 6103(h)(5) and the Federal Rules of Evidence. While the record is replete with evidence that Droge was a contentious defendant—indeed at sentencing Droge himself introduced expert psychological opinion stating that he derived a certain perverse pleasure from baiting the court—the judge's response to Droge's behavior never rose to a level where we would question his impartiality. Furthermore, we think that Judge Wexler's stinging comments at the sentencing hearing were largely in response to Droge's attorney's acknowledgement that Droge "had been a real thorn in everybody's side...."

Nor can we fault Judge Wexler for frankly chastising the defendant for his conduct. Droge was shown at trial to be a fraud and a liar. He was not only convicted on three counts of wilful tax evasion, but the prosecutor's presentence letter noted that he had filed no tax returns for fifteen consecutive years, was twice enjoined by the Commodities Futures Trading Commission from perpetrating frauds on the public, and perjured himself in a personal federal bankruptcy petition. Droge's sentence, and the court's admonitions in imposing it, serve the important function of deterring like conduct. Moreover, for a defendant such as Droge, the rehabilitative function of a criminal sentence may begin with the harsh awakening afforded by public condemnation. Rather than reflecting a personal animus, Judge Wexler's remarks were designed to supply that awakening.

## CONCLUSION

Because we conclude that government and the district court meaningfully complied with the requirements set forth in 26 U.S.C. § 6103(h)(5), that the district court's charge on the element of wilfulness was sufficient, and that the sentence imposed was sound, we affirm the judgment below in all respects.

Affirmed.