**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bob A. BUFORD and Stephen M.
Buford, Defendants–Appellants.**

**No. 88–1924.**

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1989.

Michael Logan Ware, Fort Worth, Tex., for Bob Buford.

Michael Louis Minns, Houston, Tex., for Stephen Buford.

Delonia A. Watson, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

charge to the jury was erroneous. We find error as to both issues.

Before GEE, JONES and SMITH, Circuit Judges.

GEE, Circuit Judge:

## Facts

Stephen Buford and Charles Samuels were partners in the business of selling trust instruments and arrangements to individuals. Their clients were told to convey all of their assets to the trust and to open a checking account in its name. According to the Bufords, the clients were told not to use trust checks for personal items. According to the government, the clients paid all of their bills with trust checks.

Stephen Buford and his father, Bob Buford, assisted the clients in preparing trust returns. Personal expenses incurred by the individuals were shown as losses to their trusts. The loss generated on the trust return was then transferred to each individual's personal tax return. In this manner, each individual's personal tax liability was reduced.

Stephen and Bob Buford were each charged with 14 counts of aiding and abetting the preparation of false tax returns and one count of conspiring to defraud the United States government. Stephen was convicted on all counts and sentenced to 5 years on count I, three years each on counts II through VIII (all to run concurrently), and to five years probation on counts IX through XV. Bob Buford was convicted on the conspiracy count only and sentenced to three years probation. Both appeal, raising several issues only two of which need be discussed here: 1) whether the district court improperly denied discovery of certain Internal Revenue Service, Individual Master Files and 2) whether the

## Discussion

### 1. *Discoverability of the IMF*

In a pretrial order, the district court ordered the government to comply with all discovery and inspection requests required by Fed.R.Crim.P. 16, and to provide the defendants by a specified date with all *Brady* and Jencks Act material. Stephen Buford requested a copy of his Individual Master File (herein "IMF").[1] The government refused to produce the IMF on the ground that it was beyond the scope of the district court's order. The government argued that the IMF was an internal document and was, therefore, not discoverable. Fed.R.Crim.P. 16(a)(2). It argued further that the document was immaterial and irrelevant and, finally, that *Brady* did not require its production. The district court denied Stephen Buford's request, apparently relying on the government's assertion that it contained no *Brady* material.

At some later time, believing that his IMF was exculpatory, Stephen Buford requested that the district court review his IMF in camera. The court granted Buford's request but failed to make the inspection. (The IMF is written in coded form. In order to decipher the codes, an "A.D.P. code book" is needed. The court ordered the government to produce the book. The government agreed to produce the book but failed to do so. In the meantime, the trial continued to a verdict before any in camera inspection was performed.)

At trial the government introduced evidence, for impeachment purposes only, that Stephen Buford had not filed his own income tax returns for the years 1980 to 1984. On cross-examination of Stephen Buford the government asked whether it was true that he had not filed tax returns

---

1. *Individual Master File* ("IMF")—Every person who files a Form 1040 has, under his social security number, a file in the IRS master computer in West Virginia. The form generated by the computer is referred to as the Individual Master File ("IMF"). The IMF consists of one or more pages of coded information for each social security recipient and includes, primarily, a breakdown of all information relevant to the tax status of the individual concerning the filing of federal income tax forms, the payment of taxes, refunds due, filing status, number of children, dates of filings, audits, etc.

from 1980 to 1984. Buford testified that he had filed.

The government then called Marsha Boatright, an IRS records custodian, who testified that there was no record of a return filed for Stephen Buford. Ms. Boatright based her testimony on Certificates of Assessments and payments, which were admitted into evidence. Buford's attorney, in a very able cross-examination of Boatright, elicited testimony that the Certificates of Assessments were hand prepared, using information taken from the IMF. When asked whether a mistake might have occurred, she said she had never seen one.

In addition, Buford's attorney offered, through Boatright, AMDISA[2] reports on Stephen Buford for the years 1980 through 1984. He then elicited testimony from her that the AMDISA contained information that would not have been there unless a tax return had been filed. Her testimony made clear that the Certificates of Assessments were hand prepared and that the entry "No record of return filed" was hand written onto the certificates (by someone other than Boatright), which had been prepared specifically for the trial. Her testimony continued that the AMDISA reports came directly from the computer and contained a Dif Score.[3] She also testified as to the effect of a freeze code.[4] In the meantime, repeated requests by Buford's attorney for an in camera review of the IMF apparently fell on deaf ears.

Thus, the district court denied discovery of the IMF, yet admitted in evidence two conflicting secondary sources of the data contained in it. In addition, the court agreed to review the IMF in camera, but never did so. Stephen Buford's conviction on the 14 counts of aiding and abetting likely rests, in part, on this evidence, or the lack thereof. The jury was far more likely to believe that Buford had assisted others to evade their taxes if they thought that he had failed to pay his own. The IMF will show conclusively whether or not Buford filed. The district court abused its discretion in denying Stephen Buford's request for production of the IMF and in failing to perform the promised in camera inspection.

There is no authority for the district court's action. As Buford's brief puts it, "The I.R.S. has successfully used the IMF transcript and often attached a Certificate [of Assessments] to it as an official interpretation and if the issue is not objected to or uncontested used a mere certificate, but there are no reported cases allowing a certificate over objection to be utilized without the underlying official record. To the contrary, the existing case law shows the government as the force generally trying to admit the I.M.F./N.C.C. [National Computer Center] rather than the Defendant." *See United States v. Farris*, 517 F.2d 226 (7th Cir.1975) (officially certified "I.M.F. forms" are self-authenticating; IRS central data compilation introduced by government as evidence of defendant's failure to file); *United States v. Hays*, 525 F.2d 455 (7th Cir.1975) (government proved the defendant's failure to file by use of official computer data compilations) (citing *Farris*). *See also* Fed.R.Evid. 1004 (original required unless lost, destroyed, not obtainable, in possession of opponent, or collateral). Neither the government nor the defendant has cited a case in which the government sought to *exclude* an IMF report.

## 2. Jury Instruction

Both Stephen and Bob complain that the district court's charge to the jury impermissibly shifted the burden of proof and negated the willfulness element of the offenses charged. The court charged the jury as follows:

It is not necessary for the Government to prove that either defendant knew that a particular act or failure to act is a violation of law. Unless and until outweighed

---

**2.** *AMDISA*—A computer generated "summary" of the IMF.

**3.** *Dif Score*—A discriminate information function number is assigned to each tax return *filed.*

**4.** *Freeze Code*—A code placed in the IMF indicating that a tax return, if filed, should be rejected. Thus, if a freeze code is in the IMF, an individual can file a return and the computer will, even so, show that none was filed.

by evidence in the case to the contrary, the presumption is that every person knows what the law forbids, and what the law requires to be done.

The court's charge was erroneous.

■■■■ The defendants were indicted under 18 U.S.C. section 371 for conspiring "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury and the collection of the revenues, to-wit; income taxes." They were also charged with substantive violations of 26 U.S.C. section 7206(2), which requires that the acts of the defendant be "willful." "Willful" has been defined as a "voluntary intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). Thus, the government had the burden of proving, as to both Stephen and Bob Buford[5] that the legal duty violated was "known" to them. The district court's charge relieved the government of that burden and permitted the jury to presume that the defendants had the requisite knowledge. This was improper.

To the government's credit, it cites *United States v. Davis*, which they accurately assess as "militat[ing] for an automatic reversal of the instant cause." *See United States v. Davis*, 583 F.2d 190 (5th Cir.1978).

In *Davis* the court instructed the jury, in part:

"An act is done knowingly if it is done willfully and intentionally, if done voluntarily and intentionally, and not because of mistake, accident or other innocent reason or motive.

\*　\*　\*　\*　\*　\*

Unless outweighed by evidence to the contrary, the law presumes that every person knows what the law forbids and what the law requires to be done. Therefore, the evidence that the Defendant acted or failed to act because of ignorance of the law does not constitute a defense."

We held that these instructions were inconsistent with the element of specific intent, which requires the government to prove that the defendant voluntarily and intentionally violated a known legal duty. *Davis* at 193. After citing a series of Fifth Circuit cases on the issue, we went on to say:

Considered together, these cases require that the trial court, when instructing that specific intent is required, may not instruct that ignorance of the law is no excuse, because ignorance of the law goes to the heart of the defendant's denial of specific intent.

*Id.* at 194.

In the present case, the district court did not instruct the jury that they should, or could, consider the defendants' ignorance of the law. The district court's charge was erroneous. *See also United States v. Flitcraft*, 803 F.2d 184 (5th Cir.1986) (erroneous instruction concerning ignorance of the tax laws constitutes plain error).

We must therefore remand, with instructions to the district court to perform its in camera inspection of the IMF. If this reveals that Stephen actually did not file his personal tax returns in the years 1980 through 1984, no harm was done. If, on the other hand, it turns out that Stephen did file, as he says, then he must be granted the use of that evidence at the new trial which we direct.

As to the second issue, both defendants are entitled to a new trial because of the erroneous instruction.

**REVERSED and REMANDED.**

5. To sustain a conviction for conspiracy under section 371 the government must prove "the requisite intent to commit the substantive of-

fense." *United States v. Dahlstrom*, 713 F.2d 1423, 1429 (9th Cir.1983).