UNITED STATES of America, Plaintiff,

v.

Harold L. POTTORF, Defendant.

Crim. A. No. 93–20032–01.

United States District Court,
D. Kansas.

July 8, 1993.

Leon J. Patton, Asst. U.S. Atty., Kansas City, KS, for plaintiff.

Michael Harris, Federal Public Defender, Kansas City, KS, William A. Cohan, Encinitas, CA, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

· This case involves a criminal prosecution by the United States of America against defendant Harold L. Pottorf. The government alleges that defendant willfully failed to file income tax returns for the years 1986 and 1987, in violation of 26 U.S.C. § 7203.[1] This matter is currently before the court on various pretrial motions filed by defendant. A hearing was held on the motions on July 2, 1993. Having considered the arguments presented by the parties, the court makes the following findings and order.

### I. Request for Bill of Particulars

Defendant has filed a request for a bill of particulars (Doc. # 7) and a motion to set a hearing on his request (Doc. # 9).[2]

---

1. The government originally brought this action against defendant Pottorf in 1991. That prosecution involved charges of willfully failing to file federal income tax returns for calendar years 1984, 1985, 1986 and 1987 and was in front of Judge Saffels of this court. That prosecution was dismissed by the government without prejudice immediately prior to trial. However, before the dismissal of that action, Judge Saffels ruled on a series of pretrial motions that were nearly identical to the motions filed by defendant in the instant case. *See United States v. Pottorf*, 769 F.Supp. 1176 (D.Kan.1991). Following the dismissal of the case in front of Judge Saffels, the government filed the instant action. This court shall refer to the previous action against Mr. Pottorf in front of Judge Saffels as *"Pottorf I."*

2. A hearing was held on all of defendant's pretrial motions on July 2, 1993. Therefore, the court finds defendant's motion requesting a hearing (Doc. # 9) is moot.

■ The indictment in this case charges two counts of willfully failing to file an income tax return in violation of 26 U.S.C. § 7203. The indictment contains specific factual allegations about the unpaid tax obligations; the calendar years during which defendant failed to file any tax returns; and the specific illegal actions of defendant.

The court finds that the indictment provides Mr. Pottorf with sufficient information to adequately prepare a defense, avoid surprise, and plead double jeopardy in the event of a later prosecution for the same offense. *See United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988). The request for a bill of particulars is therefore denied.

## II. Disclosure of Jury Panel Information

Defendant has filed a motion pursuant to 26 U.S.C. § 6103(h)(5)[3] for the release, in advance of trial, of jury panel information in order to obtain responses from the Secretary of the Treasury as to whether a prospective juror has been the subject of an audit or investigation by the IRS. The government, in response to defendant's motion, proposes the alternative procedure of having the clerk of the court provide jury information directly to the local IRS Disclosure Officer who can, in turn, provide the relevant information to the clerk of the court for distribution to the parties prior to voir dire. Further, the government contends that the IRS should only be required to provide audit and tax investigation information that is available on computer and not older information available only through a time-consuming manual records search. Defendant Pottorf, in reply, insists that he is entitled to all available information, whether or not on computer.

■ Although Mr. Pottorf is clearly entitled to information pursuant to 26 U.S.C. § 6103(h)(5), *see, e.g., United States v. Schandl*, 947 F.2d 462 (11th Cir.1991), the

critical question now before the court is what constitutes sufficient compliance with the statute. The Tenth Circuit has never answered this question. However, other circuits have attempted to define the scope of § 6103(h)(5) and the proper procedures to be used thereunder. *See United States v. Huguenin*, 950 F.2d 23 (1st Cir.1991); *Schandl*, 947 F.2d at 466–69; *United States v. Spine*, 945 F.2d 143, 144–50 (6th Cir.1991); *United States v. Lusseir*, 929 F.2d 25, 30 (1st Cir. 1991); *United States v. Sinigaglio*, 942 F.2d 581, 583 (9th Cir.1991).

In *Spine*, the Sixth Circuit, after reviewing the relevant case law and the legislative history of § 6103(h)(5), persuasively answered the question of whether a defendant is entitled to a full IRS response prior to trial:

> [W]e are unable to conclude that in enacting § 6103(h)(5) Congress meant to preclude the United States from prosecuting any tax case in which the IRS has not made a full response to an inquiry as to the audit histories of prospective jurors, regardless of the cost of obtaining this information in terms of delay and inconvenience and regardless of the trial court's willingness to develop the inquiry through voir dire. Instead, we feel that § 6103(h)(5) must be interpreted in light of other competing considerations, such as a district court's authority to control its docket and the public's interest in prompt and efficient administration of justice.

*Spine*, 945 F.2d at 147–48.

On its own motion, the court has previously ordered the clerk of this court to forward the names of the fifty prospective jurors on the panel to the IRS and instructed the IRS to conduct a complete search of its computerized records prior to trial.[4] Subsequent to that action by the court, counsel for the government has submitted a declaration from

---

**3.** 26 U.S.C. § 6103(h)(5) provides:

In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States Attorney) involved in such proceedings or any person (or his legal representative) who is a party to such proceeding as to whether an

individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative response or negative reply to such inquiry.

**4.** It is this court's understanding that the IRS's computerized records extend back five years.

IRS information officer Patricia Korth regarding the time frames involved in manual records searches. According to Ms. Korth's declaration, to review years from 1964 to 1988 requires a manual search of the IRS's microfilm record system. Such a search could be completed in approximately five weeks if each of the jurors lived within the area covered by the IRS Austin Service Center (Kansas, Texas, Oklahoma, and New Mexico) during those years. However, if for any year prior to 1988 a prospective juror lived anywhere other than in the four states serviced by the Austin Service Center, the inquiries would have to be shipped to the service center that retained those records. Such a search would require a minimum of ten weeks. Ms. Korth further states that she does not believe information for tax years between 1960 and 1964 has been retained, and information for tax years prior to 1960 definitely has not been retained.

Based upon the representations made by the government concerning the amount of time a manual records search would require, the court finds that Mr. Pottorf's interest in a full response to his request prior to trial is outweighed by the "court's authority to control its docket and the public's interest in prompt and efficient administration of justice." *Spine,* 945 F.2d at 148. The trial of this matter is scheduled to begin on Tuesday, August 23, 1993. Clearly, if extended beyond the Austin Service Center, a complete manual records search cannot be completed by that date and would delay the start of trial by a matter of months. However, the court believes that defendant should receive all the information that can feasibly be obtained prior to the trial date. Therefore, the court will order that in addition to the computerized records search that has already been ordered by the court, the IRS should conduct a manual records search of the Austin Service Center records only. In other words, if a juror has lived within the Austin Service Center area since 1964, his or her audit history should be provided for the entire time period. If a juror has lived outside the Austin Service Center area, the IRS need

not ship an inquiry to the other service area, but need only provide those records for the juror contained at the Austin Service Center.[5] In order to sufficiently comply with § 6103(h)(5), the court will then conduct extensive voir dire concerning the jurors' tax histories, particularly that not contained in the information supplied by the IRS. *See Huguenin,* 950 F.2d at 29–30; *Schandl,* 947 F.2d at 468–69; *Spine,* 945 F.2d at 148. Defendant Pottorf's motion is therefore granted in part and denied in part.

## III. Defendant's Motion to Dismiss or Stay Proceedings Based on 28 U.S.C. § 1861

Defendant has filed a motion to dismiss in which he attacks the constitutionality and validity, pursuant to the Jury Selection and Service Act of 1968 ("the Act"), 28 U.S.C. § 1861 et seq., of the method used by the District of Kansas to select the jury array. Defendant contends that the method of selecting grand and petit jurors in this District systematically excludes from jury service those who did not vote in the last presidential election. Defendant further contends that this systematic exclusion deprives the defendant of his constitutional and statutory right to be tried by a jury composed of a fair cross-section of the community in the district or division wherein the court convenes. *See* 28 U.S.C. § 1861. Defendant also contends that Local Rule 125, which sets forth the method of selecting prospective jurors, violates 28 U.S.C. § 1863(b)(2) because it does not contain a provision for supplementing the jury list.

■ The requirements to establish a prima facie case of a violation of the "fair cross section of the community" requirement are:

(1) that the group alleged to be excluded is a distinctive group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

---

5. The IRS is instructed to forward the computer search information previously requested as soon as it is available, and to then conduct the manual search, again forwarding the results of that search as soon as it is available.

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

Pursuant to Local Rule 125, prospective jurors in the District of Kansas are selected from the list of those who voted in the last presidential election. Local Rule 125 provides in relevant part:

(d) **Source of Names.** The names of prospective grand and petit jurors shall be selected at random from the official list of actual voters in each of the counties comprising the divisions herein designated....

(f) **Master Jury Wheel.**

The master jury wheel shall be emptied and refilled, as herein provided, between January 1 and June 30 of the year following the year in which a presidential election is held.

■ Section 1863(b)(2) of the Jury Selection and Service Act authorizes the selection of the names of prospective jurors from "voter registration lists *or the lists of actual voters* of the political subdivision within the district or division." (emphasis added). Thus, the method used for selecting prospective jurors in this district is expressly approved by the language of the Act.

Like Judge Saffels in *Pottorf I,* we find the court's decision in *United States v. Afflerbach,* 754 F.2d 866 (10th Cir.1985) is controlling. In *Afflerbach,* the appellants contended that the jury selection process of the District of Wyoming was defective because petit and grand jurors were selected from the voting registration lists. Consequently, those who did not register to vote were systematically excluded. In rejecting the appellants' argument, the court stated:

Appellants can prevail only if they show that the district's reliance on voter registration lists systematically excluded a distinct, cognizable class of persons from jury service. Persons who choose not to register to vote do not comprise such a cognizable group.

*Id.* at 870 (citations omitted).

As Judge Saffels stated in *Pottorf I:*

Similarly, in this case, the court finds that those who did not actually vote in the last election do not make a distinct, cognizable class of persons. Thus, the mere fact that nonvoters were automatically excluded from the pool of prospective petit and grand jurors does not demonstrate that the venire is not composed of a fair cross-section of the community. More specifically, the defendant has failed to show how the systematic exclusion of nonvoters impacts any distinct, and cognizable group such as a racial, gender or political group. *See, e.g., Duren v. Missouri,* 439 U.S. at 364, 99 S.Ct. at 668. Because the defendant has failed to satisfy the first prong under *Duren, i.e.,* that the "group alleged to be excluded is a 'distinctive' group in the community," defendant's motion to dismiss or stay proceedings on this basis will be denied.

*United States v. Pottorf,* 769 F.Supp. at 1185.

Agreeing with Judge Saffels in *Pottorf I,* we apply the court's decision in *Afflerbach* and find that defendant has failed to establish a prima facie case of a violation of the "fair cross section of the community" requirement. Therefore, defendant's motion is denied.

*IV. Defendant's Motion for Disclosure of Exculpatory Evidence Maintained in the Internal Revenue Service System of Records*

■ In his motion, defendant moves the court to order disclosure of voluminous documents and computer data maintained in the IRS system of records. Defendant bases his request on Rule 16 of the Federal Rules of Criminal Procedure and under the doctrine of *Brady v. State of Md.,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, and *United States v. Buford,* 889 F.2d 1406 (5th Cir.1989).

Federal Rule of Criminal Procedure 16 provides in relevant part:

(a) Disclosure of Evidence by the Government

(1) Information Subject to Disclosure

(C) Documents and Tangible Objects

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

(2) Information Not Subject to Disclosure

Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of the statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

Defendant's motion contains 63 separate requests for information from the government. The government has agreed to provide the materials requested in paragraphs 23, 25 and 26, insofar as they request communications or statements made by the defendant.[6] As to the remaining 60 requests, the government contends that the authorities relied on by defendant do not entitle defendant to discovery of the materials sought in his motion.

The court finds that defendant's motion should be denied except to the extent that the defendant seeks disclosure of the information requested in paragraphs 23, 25 and 26. As to the remaining requests, the court finds that defendant has failed to make the requisite showing of materiality under Rule 16(a)(1)(C). Defendant is charged with willful failure to file income tax returns in violation of 26 U.S.C. § 7203. The defendant has failed to show how the information requested would be material to his defense, nor can the court envision how the information requested by defendant would be material to the case. In addition, the court finds that much of the discovery which defendant seeks is specifically excepted from disclosure by Rule 16(a)(2), which prohibits the disclosure of internal government documents, reports or memoranda prepared by the attorney for the government or other government agents in connection with the investigation and prosecution of this case.

Similarly, the court finds that *Brady* and *Buford* do not provide authority for the discovery defendant seeks. On these points the court adopts the reasoning set forth by Judge Saffels in *Pottorf I*. *See United States v. Pottorf*, 769 F.Supp. at 1181.

## V. Miscellaneous Discovery Motions

■ Defendant has filed a motion under Rule 12(d)(2) (Doc. # 26); a motion to disclose electronic surveillance, eavesdropping or observance (Doc. # 33); and a motion for disclosure of informants (Doc. # 31). The court finds that all of these motions shall be denied as moot. The government has represented that no informant or eavesdropping devices were used by the government in this case and that it has no Rule 16 material which would be subject to a nonfrivolous motion to suppress. Defendant Pottorf has not indicated any dissatisfaction with the government's response. Based on such response, the court assumes that no material of the type requested by defendant shall be produced by the government at trial.

## VI. Defendant's Motion to Disclose Grand Jury Minutes and Testimony

In his motion to disclose grand jury minutes and testimony (Doc. # 28), defendant asks for "(1) documents and/or things pertaining to matters occurring before the

---

**6.** Request number 23 asks for any and all tape recordings and transcripts of tape recordings of telephonic and face-to-face contacts with defendant. Request number 25 asks for any and all statements by defendant communicated to the IRS in connection with assessment and collection of tax liabilities and/or investigation of offenses of the Internal Revenue laws. Request number 26 asks for any and all statements by defendant communicated to the IRS concerning the requirement under the Paperwork Reduction Act of 1980 that all information collection requests must display an OMB control number.

Grand Jury in the above-entitled matter; (2) any and all evidence and/or things of any evidentiary nature exhibited to said Grand Jury; (3) a transcript of all testimony regarding defendant; and (4) Grand Jury Minutes reflective of any disclosure which might include Mr. Pottorf and the persons present during deliberations as are required by Rule 6(c), F.R.Crim.P."

In *Pottorf I,* Judge Saffels set forth the applicable standards for courts to consider in determining whether to disclose grand jury testimony and other matters occurring before the grand jury. *United States v. Pottorf,* 769 F.Supp. at 1179–80. These factors include the interests of maintaining the secrecy of grand jury proceedings weighed against the disclosure of such minutes and transcripts when justice demands, including a showing of "particularized need" by a defendant. *Id.*

Upon consideration, this court finds that defendant has failed to make the requisite showing of a "particularized need" for the same reasons cited by Judge Saffels in Pottorf I. In *Pottorf I,* Judge Saffels stated:

> Upon consideration, the court finds that defendant has failed to make the requisite showing of a "particularized need." First, the court finds that defendant has made no showing that matters occurred before the grand jury which could serve as a basis to dismiss. Secondly, the court finds that defendant has not demonstrated that his defense will be greatly prejudiced without the disclosure of this information.

*Id.* at 1180.

Defendant Pottorf will be obtaining transcripts of all prosecution witnesses prior to trial as required by the Jencks Act, and will be provided all discovery required under *Brady.* Defendant has made no showing that matters occurring before the grand jury which returned the instant indictment give rise to any grounds for a motion to dismiss. Rather, he asserts that he needs the grand jury minutes and records to investigate whether grand jury abuse occurred. The court finds that invasion of the grand jury's secrecy on these speculative grounds is contrary to well-settled law and is not warranted in this case.

### VII. Defendant's Motion for Discovery and Production of Any and All Jury Contact By the Government

In his motion, defendant moves the court for discovery of any and all jury contact by the "government" prior to trial, relying upon his "rights to due process and adequate assistance of counsel as secured by the fifth and sixth amendments to the Constitution of the United States of America." Defendant employs a very expansive view of the "government," including all court personnel. Defendant requests that a "court reporter be present if, in fact, any verbal contact is made between the jury panel and any government official or court member."

In this district, jury panels are on call for three month terms. On the first day they arrive for service, the jurors are given a brief orientation. The orientation begins with a presentation by Art Nelson of the clerk's office. Mr. Nelson discusses procedural matters with the jurors including parking, security, check-in procedures, change of address, code-a-phone procedures, juror excuses, smoking policies and juror pay. The jurors then view a thirty minute film regarding what they can expect to encounter as jurors. The jurors are then greeted by one of the district court judges, whose remarks generally focus on thanking the jurors for their service. On subsequent appearances, jurors are instructed to merely meet in the jury assembly room, where they are greeted by Mr. Nelson and any procedural matters are taken care of.

The court finds no grounds for the allowance of a court reporter in these preliminary orientation sessions, nor has defendant cited any authority for this proposition. Mr. Nelson's address to the jurors deals purely with procedural matters, and the address by the district court judge is essentially a greeting and thank you to the jury panel for their time and participation. As far as the thirty minute orientation movie that is shown to the jurors, the court has no objection should counsel for the defense decide he would like to view it. Counsel should make arrange-

ments with the court to set up a convenient time should he desire to view the movie.

## VIII. Defendant's Motion for Disclosure of Exculpatory Evidence

Defendant requests disclosure of numerous items contending they contain exculpatory evidence. Defendant's requests cover 34 separate paragraphs, with many of those containing multiple subparagraphs. In support of his motion, defendant relies on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny.

In *Pottorf I,* Judge Saffels accurately set forth the *Brady* standard as follows:

> Under *Brady,* the government must disclose all "material" evidence which is relevant to a defendant's guilt or punishment. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." The burden of establishing materiality of the requested and undisclosed information rests upon the defendant, as the law does not require the government to prove that the information is not material.

*United States v. Pottorf,* 769 F.Supp. at 1178–79 (citations omitted).

 The government is not required to open its entire file to defense counsel, but is required to reveal only evidence which is favorable to the accused that, if left undisclosed, would deprive the defendant of a fair trial. *United States v. Agurs,* 427 U.S. 97, 108–09, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976). The constitution does not demand that the government disclose or allow complete discovery of everything which might influence a jury. *Id.* The Tenth Circuit has stated:

> The Government has no obligation to disclose possible theories of the defense to a defendant. If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense. To hold otherwise would impose an insuperable burden on the Government to determine what facially nonexculpatory evidence might possibly be favorable to the accused by inferential reasoning. We are confident that the Supreme court did not intend the *Brady* holding to sweep so broadly.

*United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir.1988).

 The court has thoroughly reviewed the defendant's requests, the government's response, and the foregoing authorities. The court finds that defendant's request should be denied except to the extent that the government has indicated that it will produce all discovery which it is obligated to produce under *Brady* and *Giglio.* The government has responded to each specific request of the defendant and has reiterated that it is aware of its duties under *Brady, Giglio,* and Rule 16 and will accordingly produce any exculpatory evidence which is in its possession. As to defendant's remaining requests, the court finds that defendant has failed to make the requisite showing that any additional exculpatory evidence exists, is material, or has a substantial basis for materiality as required by *Brady.*

In light of the government's representations, the court will deny defendant's motion in its present form. However, as the Omnibus Hearing Report indicates, and as this court has made clear throughout these proceedings, the government is under a continuing duty to produce Rule 16, Jencks Act, *Giglio* and *Brady* material.

## IX. Defendant's Motion for Oral Voir Dire

Defendant has filed a motion for oral voir dire (Doc. # 34). Specifically, defendant moves the court for an order allowing his attorney to conduct individualized oral voir dire of prospective jurors. The government opposes defendant's motion on the grounds that the defendant's purpose is merely to precondition the jury as to his theory of the case. In support, the government relies on the proposed list of voir dire questions filed by defendant. (Doc. # 35).

Rule 24(a) of the Federal Rules of Criminal Procedure provides:

**(a) Examination.** The court may permit the defendant or the defendant's attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or the their attorneys as it deems proper.

■■■■ The method of voir dire is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *See United States v. Evans,* 542 F.2d 805, 812 (10th Cir.1976). It is the practice of this court to conduct its own initial voir dire. The court normally accepts proposed voir dire questions from the respective parties, which the court will incorporate into its own questioning if appropriate.

In this instance, the court sees no reason to deviate from its normal procedure. The proposed questions submitted by defendant will be considered by the court in formulating its voir dire questioning in this case. Should the government desire to submit any proposed voir dire questions, or should the defendant wish to submit additional questions, the parties are directed to file such proposed questions with the court no later than August 2, 1993, which is three weeks before the scheduled start of trial. Immediately prior to trial, the court will take up the proposed voir dire questions submitted by the parties. Moreover, at the conclusion of the court's voir dire examination it will solicit from the parties any additional questions they might care to have propounded. The court will put such additional questions to the panel "as it deems proper."

### X. Defendant's Motion for Extension of Time to File Additional Pretrial Motions

■■■ In his motion, defendant basically seeks an open-ended license to file pretrial motions. Since the filing of defendant's motion, a timetable for the submission of pretrial motions, responses and replies thereto, and oral argument was worked out by the court with input from both parties. The court finds that defendant has had ample time to review materials provided by the government in discovery, formulate strategy, and prepare any relevant pretrial motions. Therefore, defendant's motion is denied. Defendant will of course be allowed to file any additional motions if good .cause is shown.

### XI. Defendant's Motion to Dismiss Indictment Based on Discriminatory and Vindictive Prosecution

In his motion, defendant argues that the instant prosecution should be barred by the First Amendment because the proceeding is a segment of a covert scheme of censorship instituted nationwide by the Internal Revenue Service against defendant's association and membership in the National Commodity and Barter Association and its service wing, National Commodity Exchange (hereinafter "NCBA/NCE").

Defendant made these same allegations in Pottorf I. In denying defendant's motion, Judge Saffels stated:

Defendant contends that the Indictment should be dismissed .because he is being impermissibly singled out and prosecuted for exercising his first amendment rights. Specifically, defendant contends that he is a target of illegal activities of the IRS due to his membership in the National Commodity and Barter Association ("NCBA"), a nationwide association of individuals who are opposed to current tax, fiscal and monetary laws and policies of the United States. Defendant further contends that the IRS is hostile toward this association and the positions which it advocates. The defendant contends that the IRS is prosecuting him in order to impede his first amendment right to free speech and freedom of association.

In determining whether defendant has established a basis to dismiss the Indictment for selective prosecution, the court begins with the premise that "the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84

L.Ed.2d 547 (1985). Further, "the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). It has been further stated that a presumption exists that a prosecution for violation of the criminal law is in good faith. *United States v. Bennett*, 539 F.2d 45, 54 (10th Cir.) *cert. denied* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976) (citation omitted). Nevertheless, "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints." *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979).

In order to establish a prima facie case of selective prosecution, the defendant must prove the following elements: (1) others similarly situated have not been prosecuted for the same conduct, (2) that the prosecution has singled out the defendant intentionally, and on the basis of an arbitrary and invidious criterion, such as race, religion or political beliefs. *United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir.) *cert. denied* 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991): *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir.1984). In reviewing the parties' arguments and authorities cited herein, the court finds that defendant has failed to establish a prima facie case for selective prosecution. First, the court finds that defendant has failed to establish that others similarly situated have not been prosecuted for failing to file tax returns. Secondly, while it may be true that vocal tax protesters are more frequently prosecuted for failure to file income tax returns, this disparity is not the result of impermissible discrimination. Instead, this disparity results from the fact that the IRS is "more likely to discover violations by persons who make public statements." *United States v. Kahl*, 583 F.2d 1351, 1353–54 n. 2 (5th Cir.1978). This is especially true in the instant case because the defendant had direct contact with IRS agents to whom he communicated his opposition to the payment of income taxes. Thus, the court finds that the basis of defendant's prosecu-

tion is his alleged failure to file income tax returns, not his membership and association with the NCBA. Accordingly, the defendant's motion to dismiss based upon selective prosecution will be denied.

*United States v. Pottorf*, 769 F.Supp. at 1184–85.

Defendant has raised several arguments in the present case in addition to those made in *Pottorf I*. Chief among these is an attempt to demonstrate an unconstitutional scheme on the part of the IRS to suppress the First Amendment rights of the NCBA/NCE and its members in light of the Tenth Circuit's recent pronouncement in *United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir.1992). In *P.H.E.*, obscenity defendants sought dismissal of an indictment based upon alleged vindictive prosecution. The lower court denied defendants' motion to dismiss and defendants appealed. The Tenth Circuit determined that defendants had, indeed, established vindictive prosecution, thereby shifting the burden to the government prosecutors to justify their decision to indict defendants with legitimate, articulable and objective means.

In *United States v. Holland*, No. 90–CR–10–B, —— F.Supp. —— (N.D.Ok. January 12, 1993), Judge Thomas R. Brett analyzed the identical argument made by Pottorf in the present case. Like Pottorf, the defendants in *Holland* were NCBA members who argued that the prosecution against them was vindictive, relying on the court's holding in *P.H.E.* Judge Brett underwent an extensive analysis of the *P.H.E.* holding and also thoroughly analyzed other First Amendment cases involving political organizations that become voluntarily involved with the income tax laws of the United States. Judge Brett concluded that the government had amply demonstrated a compelling interest, i.e. a good-faith criminal investigation, sufficiently focused on defendants' non-First Amendment activities. Judge Brett further concluded that defendants failed to demonstrate that the case resulted from selective and/or vindictive prosecution emanating from bad moti-

vation or animus on the part of the Internal Revenue Service.

▮▮▮▮ This court concurs with the findings of Judge Saffels in *Pottorf I* and Judge Brett in *Holland,* and therefore will deny defendant's motion. The court finds that defendant has failed to show that others similarly situated have not been prosecuted for willful failure to file income taxes, and therefore has not established a prima facie case for selective prosecution. Similarly, the court finds the circumstances in the present case distinguishable from those in *P.H.E. P.H.E.* involved substantial evidence of an extensive government campaign designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights.[7] In the present case, the evidence presented by Pottorf does not lead the court to conclude that the purpose of the government's action against him is designed to chill the exercise of his First Amendment rights.

Pottorf vigorously contends that his case is different from *Holland* because, unlike the situation there, he has proffered the "key document," labeled Exhibit 36 to his memorandum, which demonstrates the IRS' evil motive. Exhibit 36 consists of two stapled pages. The first page is entitled "Comments on the Illegal Tax Protester Study Report" and is dated May 1979. The second page contains what are apparently statements by unknown individuals. The individual making the statements is not identified, nor is there anything to even indicate that the second page is connected to the first. On the second page, under the heading "Southwest Region—Regional Counsel," the following quote appears: "Such a task force in this area would definitely be conducive to the concept of cutting off the head, *i.e.,* the National leaders who are constantly on the move from Service District to Service District, to kill the body."

The court does not agree with Mr. Pottorf that this document is significant. First of all, it is far from clear that it is an authentic IRS document. Moreover, even taken at its face value and giving the defendant the benefit of the most favorable interpretation, at best it

appears to reflect the comment of one IRS regional counsel with no indication that it represents IRS policy or that Mr. Pottorf is in any way implicated by it. It falls far short of what was represented by the *Holland* defendants to be a "smoking gun" type document, which Judge Brett noted was strangely absent from all the papers with which the court had been deluged.

▮▮▮ Pottorf makes an additional argument that the prosecution against him is in retaliation for his assertion of his fifth amendment right to remain silent during a show cause hearing before Magistrate Rushfelt on July 17, 1986. Judge Saffels addressed this argument in *Pottorf I* and we adopt his reasoning in denying defendant's motion on this point. *See United States v. Pottorf,* 769 F.Supp. at 1185.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's request for bill of particulars (Doc. # 7) is denied. Defendant's motion to set a hearing on his request (Doc. # 9) is moot.

**IT IS FURTHER ORDERED** that defendant's motion for disclosure of jury panel information pursuant to 26 U.S.C. § 6103(h)(5) (Doc. # 21) is granted in part and denied in part, as set forth in the preceding order. Upon the return of the tax information from the IRS, the Clerk of the Court shall forward copies of such information to counsel for the defendants and counsel for the United States.

**IT IS FURTHER ORDERED** that defendant's motion to inspect and copy records (Doc. # 23) and defendant's motion to dismiss or to stay proceedings based on 28 U.S.C. § 1867(a) (Doc. # 37) are denied.

**IT IS FURTHER ORDERED** that defendant's motion for disclosure of exculpatory evidence maintained in the IRS system of records (Doc. # 24) is granted in part and denied in part. The government is instructed to provide the materials requested in paragraphs 23, 25 and 26, insofar as they request communications or statements made by the defendant.

---

7. Judge Brett fully sets out the facts of *P.H.E.* which make it clearly distinguishable and they need not be repeated here.

**IT IS FURTHER ORDERED** that defendant's motion under Rule 12(d)(2) (Doc. #26); defendant's motion to disclose electronic surveillance, eavesdropping or observance (Doc. #33); and defendant's motion for disclosure of informants (Doc. #31) are denied.

**IT IS FURTHER ORDERED** that defendant's motion to disclose grand jury minutes and testimony (Doc. #28) is denied.

**IT IS FURTHER ORDERED** that defendant's motion for discovery and production of any and all jury contact by the government (Doc. #30) is granted in part and denied in part. Defendant or defendant's counsel is invited to contact the court regarding a convenient time for viewing the orientation film shown to members of the jury pool on their first day of duty as jurors.

**IT IS FURTHER ORDERED** that defendant's motion for disclosure of exculpatory evidence (Doc. #32) is granted in part and denied in part. The defendant's motion in its present form is denied. However, the government remains under a continuing duty to produce Rule 16, Jencks Act, *Brady* and *Giglio* material in its possession.

**IT IS FURTHER ORDERED** that defendant's motion for oral voir dire (Doc. #34) is denied. Defendant's proposed voir dire questions (Doc. #35) shall be considered by the court for inclusion in its voir dire of the jury. If the defendant or the government wish to submit additional proposed voir dire questions, such questions should be filed with the court no later than August 2, 1993, which is three weeks before the scheduled start of trial.

**IT IS FURTHER ORDERED** that defendant's motion for extension of time to file additional pretrial motions (Doc. #36) is denied subject to defendant's right to file such motions upon a showing of good cause.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss indictment based on discriminatory and vindictive prosecution (Doc. #38) is denied.

**IT IS SO ORDERED.**